27725. BENNETT v. CLEMENS et al.

ARGUED FEBRUARY 13, 1973 — DECIDED MARCH 8, 1973 — REHEARING DENIED MARCH 22, 1973.

*Irwin M. Levine,* for appellant.

*Hicks, Eubanks & Scroggins, John H. Hicks,* for appellees.

JORDAN, Justice. 1. Enumeration one contends that the court erred in "not determining that the grandparents had shown no right to have custody of the child and therefore erred in not dismissing this petition." The record before us shows no motion to dismiss the petition nor any other effort in the trial court to question the standing of the petitioners to bring the habeas corpus action. This enumeration is without merit. As to such standing by the petitioners, see *Harper v. Ballensigner,* 226 Ga. 828 (1) (177 SE2d 693).

2. The other enumerations complain of the award of custody to the grandparents instead of retaining it in the mother or awarding same to the natural father. The father, while a witness, was not a party in the trial court nor one of the appellants in this court. The only question here is whether the trial court under the evidence presented abused its discretion concerning the welfare of the child in awarding custody to the grandparents.

The evidence is voluminous and, while conflicting in some aspects, authorized the findings that the mother, after divorcing her husband, moved to Atlanta and lived for several years in different locations with the child, worked for a so-called "underground" newspaper, that she had been arrested for possession of marijuana and on a plea of nolo contendere was given a two year sentence on probation, that in the fall of 1970 she left Atlanta to attend the funeral of her mother in Delaware, leaving the child with 4 female friends, one of whom was a defendant, and thereafter went to San Francisco where she has since lived while pursuing her vocation as a writer and poet; that the female friends with whom she left the child smoked "pot" on occasions, engaged in sexual acts with men and with each other in the presence of the child and otherwise taught the child about "the gay life."

In a proceeding involving the custody of a child, a change in the circumstances of the party having legal custody of the child which materially affects the child's welfare, will authorize the court in the exercise of a sound discretion to protect the welfare of the child. Under the facts as shown by this record we cannot say that the trial court abused that discretion by awarding custody of the child to the petitioners.

*Judgment affirmed. All the Justices concur, except Hawes and Gunter, JJ., who dissent.*

GUNTER, Justice, dissenting. This dissenting opinion relates to an issue whose time, I believe, has come. The thesis of this dissent is that the state, through its judicial

branch, cannot impose a standard of morality devised by judges upon parents of a child when a determination must be made concerning the loss of permanent custody of the child by the parents to a third party.

This habeas corpus action was brought by the paternal grandparents of a nine-year-old child to secure temporary and permanent custody of the child. They contended that the child was living in a "commune-type environment which is immoral, unwholesome and deleterious to the welfare and well being" of the child.

The trial judge conducted a hearing, heard testimony from thirteen witnesses which when transcribed consisted of approximately three hundred (300) pages, and he then entered a judgment granting permanent custody of the child to the paternal grandparents. This appeal is from that judgment.

The record discloses that the natural parents are both graduates of Harvard where they were National Merit Scholars. They were divorced several years ago and the mother was awarded permanent custody of the child.

There is no evidence in the record that the child's physical needs were not being cared for. There is no evidence in the record that the child was neglected, abused, or mistreated in any way. There was evidence in the record that the child attended school and church regularly.

Dr. Lila Bonner Miller, an Internist and Psychiatrist, after examining the child and those with whom she lived, testified: " . . . She is a great little girl and whatever happened to her is really pretty fine. I don't think it is one person. I think it is a lot of people loving her. This child has felt love, there is no doubt about that." Dr. Miller further testifed that in her opinion the child had been living in a "healthy environment."

The natural mother testified that she wanted to retain custody of the child and was capable of properly caring for the child.

The natural father testified that he wanted his former wife to have custody of the child, that if she could not have custody then he wanted custody of the child, but that he did not want his 65-year-old parents, the child's paternal grandparents, to have custody of the child.

As I read this record the only complaint by the grandparents is that the child is being brought up in an immoral, hippy-type environment, and that the rearing of a child in such an environment is not in the child's best interest.

It has long been the law in this state that a natural parent has a paramount legal right to custody of his or her child in a contest with a third party, and when a parent's right to custody is resisted, a proper regard for the sanctity of the parental relation requires that the objection to this paramount legal right can only be sustained by clear and satisfactory evidence. The discretion to be exercised by courts in such contests is not arbitrary. The breaking of the tie that binds parent and child to each other can never be justified without the most solid and substantial reasons, established by plain proof. See *Chapin v. Cummings,* 191 Ga. 408 (12 SE2d 312) (1940).

In the instant case it is beyond question that either natural parent of this child has the paramount legal claim to her custody. Have solid and substantial reasons, established by plain proof, been given for the forfeiture of this paramount legal claim? I plainly say no.

The concept of the state's right to intrude upon the privacy of a parent-child relationship with respect to the manner in which a child is reared is limited to a situation where a child is neglected, abused, or mistreated in some manner.

Where neglect, abuse, or mistreatment in some manner is absent, the state has no right to inquire into what a parent teaches his child, or with whom a parent allows his child to associate, or the type of environment a parent

permits his child to inhabit. These are fundamental family rights, protected by the Common Law and our Bill of Rights, free from governmental intrusion. Freedom to think, teach, and express; freedom of association with other persons or classes of persons with varying degrees of morality and philosophy; freedom to inhabit a chosen cultural environment; and freedom to adopt a life-style that may not have the approval of the majority; all of these are basic to our concept of liberty, and these freedoms exist even more emphatically within the family or the parent-child relationship.

Within this relationship the family or the parent adopts a moral standard for the members' conduct and associations, and the state cannot intrude upon or disrupt this relationship by asserting a different moral standard, conceived by judges, that must be adhered to.

Mr. Justice White in his concurring opinion in the case of Griswold v. Connecticut, 381 U. S. 479 (85 SC 1678, 14 LE2d 510) (1964), said: "Suffice it to say that this is not the first time this court has had occasion to articulate that the liberty entitled to protection under the Fourteenth Amendment includes the right 'to marry, establish a home and bring up children,' Meyer v. Nebraska, 262 U. S. 390, 399, and 'the liberty . . . to direct the upbringing and education of children,' Pierce v. Society of Sisters, 268 U. S. 510, 534-535, and that these are among 'the basic civil rights of man.' Skinner v. Oklahoma, 316 U. S. 535, 541. These decisions affirm that there is a 'realm of family life which the State cannot enter' without substantial justification. Prince v. Massachusetts, 321 U. S. 158, 166." P. 502.

In a contest between a natural parent and a third party for permanent custody of a child, the only justification that I can see for the state to divest the natural parent of permanent custody is that the child is neglected, abused, or mistreated in some manner. What a child is taught, with whom a child is allowed to associate, and the

environment that a child is permitted to inhabit,—none of these individually and all of them in concert do not constitute substantial justification for the state, through its judiciary, to divest a natural parent of the permanent custody of his child.

In this case both of the natural parents of the child were before the court at the habeas corpus hearing and both testified. Nevertheless, the trial judge, in his final judgment awarding permanent custody of the child to the paternal grandparents, included the following in his judgment: "The father, John Clemons, Jr., not being a party in this action, and there being no opportunity to have an investigation made of him, it is hereby judged that no ruling is made, express or implied, one way or the other, as to the custody or visitation rights of said father."

It is clear to me that the trial judge in this case abused his discretion in awarding permanent custody of this child to her paternal grandparents. And with all due deference to my brothers of the majority, I think that they merely substituted their standard of morality for that of the natural parents of the child in affirming the judgment below.

I would reverse the judgment. I respectfully dissent.

I am authorized to state that Mr. Justice Hawes joins in this dissent.