### 27923. MATHEWS v. MATHEWS.

PER CURIAM. In a divorce action by Mary E. Mathews against her husband, M. C. Mathews, the trial judge, after a lengthy hearing, entered an order on September 29, 1972, "placing temporary custody of Laura Mathews, Denise Mathews, M. C. Mathews, Jr., and Dee Mathews under the complete temporary custody and control of their mother, the plaintiff, Mary E. Mathews." The order further gave the right of visitation to the husband, M. C. Mathews, "every other weekend from Friday at 6:00 P.M. until Sunday at 6:00 P.M." Thereafter, Mary E. Mathews, appellant herein, filed a petition to modify her temporary order in certain particulars and asked the court to adjudge the appellee, the husband, in contempt for violation of his order of September 29, 1972. The petition alleged that the father had used vulgar, profane, obscene and derogatory language about appellant to the children keeping the children upset during the entire period of visitation and keeping them up until very late hours at night making them arise at a very early hour in the morning. This petition to modify came on regularly to be heard on the 27th day of October, 1972, and as the result of said hearing an order was entered allowing a

moratorium on visitation by the appellee with the two younger children, M. C. Mathews, Jr., and Dee Mathews, as follows: "In lieu of the aforesaid visitations the defendant shall have the privilege of visiting with the minor children, M. C. Mathews, Jr., and Dee Mathews, at the residence of the plaintiff on every other Sunday afternoon between the hours of 1:00 p.m. and 5:00 p.m. with the further provision that the mother of the plaintiff, Mrs. O. J. Brackett, shall be in attendance during such visitation." Further problems developed between the appellant and the appellee, and on January 12, 1973, a citation for contempt was filed by the mother against the father. The citation for contempt alleged violation of the modification order of the court and asked the appellee be adjudged "in contempt of the Cherokee Superior Court and lodged in the common jail of Cherokee County until he shall have purged himself of the contempt of the court." During this hearing on the citation for contempt held February 2, 1973, a further order was entered removing temporary custody from the appellant mother and placing temporary custody of the minor children in the grandparents. This order reads as follows: "Temporary custody of the minor children of the parties, to wit: Laura Mathews, Denise Mathews, M. C. Mathews, Jr., and Dee Mathews is placed in the maternal grandparents, Mr. and Mrs. O. J. Brackett, from Sunday at 2:00 p.m. through Friday afternoon at 4:30 p.m. of each week and in Mr. and Mrs. W. A. Mathews, the paternal grandparents from Friday afternoon at 4:30 p.m to Sunday afternoon at 2:00 p.m. with either party having equal right of visitation. Further, the paternal grandparents, Mr. and Mrs. W. A. Mathews, shall have temporary custody of said children on each holiday. Grandparents shall be responsible for the supervision of school attendance, visitation and training of said minor

children." The mother appeals from this order. The trial judge signed a certificate for immediate review.

The errors enumerated are: (1) The trial court erred in entering its order dated February 2, 1973, entered February 8, 1973, which on hearing for citation for contempt brought by the appellant against the appellee changed temporary custody of the minor children of the parties from the custody of the appellant and vested said custody in the grandparents. (2) The trial court erred in ruling on a question of custody when only the issue of contempt was before it and no pleadings were pending raising the issue of custody. (3) The trial court erred in ruling on a question of custody when no notice was given to the appellant that the court was considering such issue during a contempt proceeding against appellee brought by appellant, particularly in a case where no defensive pleadings have been filed. (4) The trial court erred in ruling on a question of custody when its rule nisi order establishing the hearing specifically set forth that the appellee was to show cause on a specified date why the prayers of appellant's citation for contempt should not be granted.

From the above enumerations of error, the sole question of law is whether the trial court erred in removing temporary custody of the minor children of the parties in this divorce action from the mother and placing the custody in the grandparents where the only pleadings filed in the case were the contempt citation against her husband and that the rule nisi order recited that the hearing was being held for the purpose of ruling on the contempt. The appellant in her appeal relied upon *Hunnicutt v. Sandison,* 223 Ga. 301 (2b) (154 SE2d 587) where it was held that "In a contempt proceeding the trial judge has no discretion to modify the terms of a decree for divorce and alimony." Appellant also relied on Georgia Law of Children, p. 226, n. 94, where

Professor Stubbs states: "But there is no authority to determine any question relating to custody in a contempt proceeding, even though the citation stem from a failure to comply with a court order in a divorce or alimony case. Hunnicutt v. Sandison, 223 Ga. 301, 154 SE2d 587 (1967)."

This court in a most recent decision, *Foster v. Foster,* 230 Ga. 658, 660, decided May 31, 1973, followed *Graham v. Graham,* 219 Ga. 193 (1, 3) (132 SE2d 66), and held as follows: "The authority of the presiding judge, frequently referred to as plenary, . . . to control the custody of minor children (under age 14) pending a divorce suit between their parents is very broad, so that in the exercise of sound discretion the judge may from time to time, until the final decree is entered, modify his orders in this respect and transfer the possession of the children from the persons to whom custody was originally granted and commit them into the care of other and different parties . . .

"Where . . . the presiding judge pending a divorce suit places the minor children of the litigants in the possession of third parties prior to the final decree as authorized by Code Ann. § 30-127, . . . and Code § 30-206, such third parties . . . are mere temporary custodians of the children, agents of the court, appointed for the convenience of the judge to aid him in seeing that the children are adequately cared for until his further order."

We have determined that the discretion of the judge is broad as long as the case is in the bosom of the court and no permanent custody has been granted as in the final divorce. The temporary custody hearing does not decide any final issues between the parties. In *Foster v. Foster,* supra, we held the child may be given to one person at one hearing and another person at another hearing. In view of the broad discretion given the trial judge in temporary award of custody, we are of the

opinion that he did not abuse his discretion in placing the child with a third person pending the divorce suit and he had a right on his own motion to change the custody even in a hearing set to hear contempt.

*Judgment affirmed. All the Justices concur, except Undercofler and Hawes, JJ., who dissent.*

SUBMITTED MAY 14, 1973 — DECIDED JULY 3, 1973.

*Holcomb & McDuff, Frank D. Holcomb, Terry Willis,* for appellant.

HAWES, Justice, dissenting. This case follows *Foster v. Foster,* 230 Ga.658,in which I also dissented. I joined Mr. Justice Gunter in his dissent in *Bennett v. Clemens,* 230 Ga. 317, 319 (196 SE2d 842), and as I leave this court I should like to leave my reason. I am unalterably opposed to the use of "unbridled discretion." In *Foster v. Foster,* the court specifically found that plaintiff and defendant were both physically, mentally and morally fit persons to have the custody of the minor children of the parties. This court, in too many cases, has held that a minor child, or children, under those circumstances cannot be given to a third party as a matter of law. Temporary orders of the court should be guided by these same rules of law. In the case, supra, this court has broadened the discretion of the trial judge, and, in doing so, has erred. This appellant mother had been awarded custody of the children and appellee had been given certain visitation rights. When appellee husband continued to violate his visitation privileges, as shown in the majority opinion, the mother brought a petition for contempt, the only vehicle provided by law, the sole purpose being to aid the judge in carrying out the previous temporary order signed by him. A rule nisi issued for appellee to show cause why he should not be held in contempt. The only issue before the court was one of contempt. The trial judge, from the evidence, admitted the appellee was in contempt, but instead of

fining him or placing him in the common jail, proceeded to treat it as one of custody and awarded the children one week to the paternal grandparents and the next week to the maternal grandparents. Since both of these cases were certified to this court for review, and since this court limits its jurisdiction to errors of law, it was incumbent upon the court to find as a matter of law that the third party grandparents were not entitled to the children; secondly, when the only question before the court is one of contempt, it was error to treat it as one of custody. If a change of custody were necessary, it should have been done by a separate petition.

Professor Stubbs, in Georgia Law of Children, says: "But there is no authority to determine any question relating to custody in a contempt proceeding, even though the citation stem from a failure to comply with a court order in a divorce or alimony case." P. 226, n. 94. This statement is supported by the law of this State in *Hunnicutt v. Sandison,* 223 Ga. 301 (2b) (154 SE2d 587). This court said, "In a contempt proceeding the trial judge has no discretion to modify the terms of a decree for divorce and alimony." To proceed in any manner other than to adjudicate the contempt proceeding is according to this law error. Discretion is a mystical word, each judge using his own discretion to determine what it means. In *Miller v. Wallace,* 76 Ga. 479, 484, Mr. Justice Hall, in discussing the section of the Code which allows the judge to exercise discretion as to whom the custody of such child shall be given and when it gave the right to give custody of a child to a third party, he said: "The discretion to be exercised in such case is not an arbitrary and unlimited discretion like that confided to the Roman praetors, but, as remarked by Lord Mansfield in R. v. Wilkes, 2 Burr., 25, 39, is such a 'discretion as, when applied to a court of justice, means sound discretion *guided by law.* It must be governed by rule, not by humor; it must not be arbitrary, vague and fanciful, *but legal and regular.'* . . . Dr. Broom

in his Legal Maxims, 84 et seq., in treating of the kind of discretion entrusted to courts and judges, pointedly and aptly remarks, 'It is held the duty of the judge, in a land jealous of its liberties, to give effect to the expressed sense or *words of the law,* in the order in which they are found in the Act, and according to their fair and ordinary import and understanding; for it must be remembered that *the judges are appointed to administer, not to make the law,* and that the jurisdiction with which they are entrusted has been defined and marked out by the common law or acts of parliament.' " (Emphasis supplied.) See, also, page 486 where the court said: "Under the 'discretion' vested in him, no judge has authority to disregard or even to impair any acknowledged or established right of a party by its exercise, and if he does so, it would seem to follow, as a necessary consequence, that he abuses that discretion."

In *Lamar v. Harris,* 117 Ga. 993, 997, Mr. Justice Candler said: "The law does not fly in the face of nature, but rather seeks to act in harmony with it, and to that end encourages formation and continuation of those ties which, by the inscrutable providence of God, binds a man to his own flesh." This brings to me my barnyard philosophy, often referred to by other members of the court. I might be wrong, but I don't think any of them question my sincerity. I believe that the Supreme Judge of the Universe had the first discretion, and it was he who ordained that the female of the species should replenish the earth, and built into her instincts and intuitions which aid a mother in protecting and raising her young. This love is not severed when the umbilical cord is cut. Yes, I believe the calf should follow the cow.

I realize the hardest decision a judge has to make is where to place custody of children in certain situations. We are all human, and the purpose of the law is to give guidance.

In Encyclopedic Law Dictionary, the first law book that

I purchased 52 years ago, I find under "Discretion": "The equitable decision of what is just and proper under the circumstances. The power of a judge, in certain matters, to decide in accordance with his own judgment of the equities of the cases, unhampered by inflexible rules of law. The latitude allowed to judges as to the action to be taken on certain facts. . . The discretion of a judge is said to be the law of tyrants. It is always unknown; it is different in different men; it is casual, and depends upon constitution, temper and passion. In the best, it is every vice, folly, and passion to which human nature is liable."

Latin is imbedded in our law, and many of our most profound truths are found there. To the Justice who requested another Latin maxim, I submit the following: "Optima est lex, quae minimum relinquit arbitrio judicis (That is the best system of law which confides as little as possible to the discretion of the judge); Optimus judex, qui minimum sibi (He is the best Judge who relies as little as possible on his own discretion); and Optimam esse legem, quae minimum relinquit arbitrio judicis; id quod certitudo ejus praestat (That law is the best which leaves the least discretion to the judge; and this is an advantage which results from its certainty)." Discretion does not encompass the infringement of a right otherwise held by other parties. The right of natural parents to the custody of a child cannot be divested without cause; something must work a forfeiture, and I would so hold.

I respectfully dissent.