S94A0264. IVEY v. IVEY.
(445 SE2d 258)

THOMPSON, Justice.

Toni Long Ivey filed a complaint for divorce from Charles Allen Ivey. The parties have two children: Jared (defendant's son by a previous marriage who was adopted by plaintiff) and Nathan. Plaintiff sought temporary and permanent custody of the children, temporary and permanent alimony and child support, and an equitable division of property. Defendant did not contest the divorce; but counterclaimed for custody of the children, "especially the oldest child [Jared]," pointing out that he is Jared's biological parent and plaintiff is Jared's adoptive parent.

A consent order was entered with respect to temporary custody of the children. The order provided that, "pending a final judgment," plaintiff was to have temporary custody of the children and defendant was to have visitation. The parties appeared in court two months later to adjudicate "all issues," including custody, support and equitable division of property. The parties presented evidence concerning their fitness, financial standing, and property. The court then recessed and ordered an investigation of plaintiff's home situation and an appraisal of the marital property, adding that it would render a decision as soon as it received an investigative report and that, in the meantime, custody and visitation would stay the same.

Seven months later, the court entered an order finding that "it would be in the best interest of the children [to] remain in custody of the plaintiff with liberal visitation to defendant." In reaching that conclusion, the court acknowledged that "defendant has been a good father" and that plaintiff is not the biological parent of Jared. It pointed out, however, that plaintiff is a "good mother" and that Jared "never knew his birth mother and appears to be very close to the plaintiff, [his] adoptive mother."

Approximately one year after the parties first appeared in court, defendant filed a written demand for a jury trial "on all issues triable by a jury." That same day, the court called the case to consider further the issues of child support, visitation and equitable division of property. The court denied defendant's jury demand, concluding that it was not timely filed. In that regard, the court explained that the trial had begun one year previously; that it had been continued to allow for an investigation of plaintiff's home; and that it was being resumed.

Following that hearing, the court entered a final judgment granting a divorce to the parties. Therein, the court incorporated the previously entered custody order and specified visitation. In addition, the court set forth defendant's child support obligation and divided the parties' property. Defendant sought, and we granted, a discretionary appeal.

1. "[W]here the right to trial by jury is statutory then the terms of the statute must be construed in determining whether a waiver occurs. *Holton v. Lankford*, 189 Ga. 506, 518 [(6 SE2d 304) (1939)]. See *Cox v. Cox*, 197 Ga. 260, 263 (29 SE2d 83) [(1944)]." *Henderson v. Bd. of Registration*, 126 Ga. App. 280, 284 (190 SE2d 633) (1972). OCGA § 19-5-1 provides, in part:

> Unless an issuable defense is filed as provided by law and a jury trial is demanded in writing by either party on or before the call of the case for trial, in all petitions for divorce and permanent alimony the judge shall hear and determine all issues of law and of fact and any other issues raised in the pleadings.

This Code section makes it clear that the parties will waive their right to a jury trial in a divorce case if they fail to make a written demand for a jury trial on or before the call of the case. See *Henderson v. Bd. of Registration*, supra.

It is clear that the trial began at the first hearing;[1] that it was

---

[1] The parties acknowledged at the outset of the first hearing that "all issues" needed to be decided, including custody, support, and equitable division of property. They had already

continued to obtain investigative reports; and that it resumed at the second hearing. Because defendant participated in the trial when it was commenced initially, we must conclude that he waived his right to a jury trial. See *Smith v. Smith*, 223 Ga. 454 (1) (156 SE2d 18) (1967) (demand for jury trial was not filed before the call of the case for trial but after counsel had announced ready). Cf. *Camilla Cotton Oil Co. v. C.I.T. Corp.*, 143 Ga. App. 840 (240 SE2d 212) (1977) (no waiver where defendant demanded jury trial in answer and brought demand to court's attention in midst of trial).

Defendant would have preserved his right to a jury trial if he had made his demand earlier (e.g., in his answer) and insisted upon his right to a jury trial when the case was first called for trial. If defendant was uncertain about the issues to be resolved when the case was called, he should have asked for clarification and direction.

2. Defendant asserts the trial court erred in awarding custody of Jared to plaintiff. In this regard, he posits that in a custody battle between a biological parent and an adoptive parent, there should be a rebuttable presumption that custody should be awarded to the biological parent.

Our law is clear: "A decree of adoption creates the relationship of parent and child between [the adoptive parent] and the adopted individual, as if the adopted individual were a child of biological issue of the [adoptive parent]." OCGA § 19-8-19 (a) (2). Thus, an adoptive parent stands on the same footing and has the same rights and obligations as a biological parent.

It follows that in a custody dispute between a biological parent and an adoptive parent preference cannot be given to the biological parent. The test in a custody case of that kind is the same as in any child custody case, i.e., what is in the best interest of the child. OCGA § 19-9-3 (a).

It cannot be said that the trial court abused its discretion in determining that it was in Jared's best interest to have custody awarded to his adoptive mother. It was the trial court's

> duty to make an award of custody which would best promote the welfare and happiness of the children involved, and his finding upon that issue, as the record shows, is abundantly supported by evidence.

*Adams v. Adams*, 206 Ga. 881, 882 (3) (59 SE2d 366) (1950).

3. In entering the custody order, the court pointed out that it had

---

agreed that "pending a final judgment," plaintiff would have temporary custody of the children. Thus, there was no need to consider the custody issue unless permanent custody was to be decided.

"received numerous letters and telephone calls from friends and relatives of both plaintiff and defendant. The letters were an attempt to show what a good parent the plaintiff or defendant was and would continue to be." The court added: "The contacts to the court have been close to equal for both parties."

Defendant contends the trial court erred in considering ex parte communications with regard to the custody issue. The trial court candidly pointed out that it had received the communications and defendant did not object at that time. We find no indication in the record that the trial court gave any consideration to the ex parte communications. Instead, it clearly specified the evidence that it relied upon (apart from the communications) in concluding that custody should be awarded to plaintiff. Accordingly, we find no harmful error. Compare *Arnau v. Arnau*, 207 Ga. App. 696 (429 SE2d 116) (1993) (consideration of ex parte communication was harmful error) with *Stinchcomb v. State*, 192 Ga. App. 8, 10 (383 SE2d 609) (1989) (technical violation of rule against ex parte communications does not require reversal). We hasten to add, however, that judges must scrupulously avoid ex parte communications whether or not they consider them. Judges should avoid the appearance of impropriety when they carry out their duties. *Taylor v. Public Convalescent Svc.*, 245 Ga. 805, 806 (267 SE2d 242) (1980).

*Judgment affirmed. All the Justices concur, except Hunstein, J., who concurs specially.*

SEARS-COLLINS, Justice, concurring.

I fully concur in the majority opinion. I write only to emphasize that the record supports the trial court's decision that the initial hearing in this case was the beginning of the final trial, and not a rule nisi or other temporary hearing. In this regard, the trial court's decision is supported not only by the factors set forth in footnote 1 of the majority opinion, but also by the absence of any evidence to indicate that a temporary hearing was scheduled for the date of the initial hearing, and by the fact that equitable division of property, which the parties agreed to and did consider at the initial hearing, is an issue which cannot be resolved on a temporary basis.

I am authorized to state that Chief Justice Hunt and Justice Carley join in this concurrence.

HUNSTEIN, Justice, concurring specially.

I concur in judgment only as to Division 3 of the majority opinion. The Code of Judicial Conduct and the Uniform Superior Court Rules could not be more plain in the condemnation of ex parte communications by judges. "Judges shall not initiate or consider ex parte communications, or consider other communications made to them

outside the presence of the parties concerning a pending or impending proceeding," Code of Judicial Conduct, Canon 3 (B) (7), except under certain strictly-limited circumstances clearly defined in the canon. Id. at (a-e). See, to the same effect, Uniform Superior Court Rule 4.1 ("[e]xcept as authorized by law or by rule, judges shall neither initiate nor consider *ex parte* communications by interested parties or their attorneys concerning a pending or impending proceeding").

The trial judge in this case did more than passively receive unsolicited letters sent by individuals regarding a pending proceeding. By his own statements, the judge engaged in telephonic communications with numerous individuals in which the merits of the pending proceeding were discussed and unilateral exhortations were made on behalf of the parties to the proceeding. The fact that the judge did not "consider" these communications in arriving at his decision does not render the violation of the rule against ex parte communications errorless as ex parte communications are presumed to have been in error, *Arnau v. Arnau*, 207 Ga. App. 696 (1) (429 SE2d 116) (1993), and even technical violations of the rule are subject to criticism. E.g., *Stinchcomb v. State*, 192 Ga. App. 8, 10 (383 SE2d 609) (1984). Nor does the fact that counsel for the parties failed to object when the trial court disclosed the ex parte communications mitigate the error, as it is well established that

> [t]he responsibility for the enforcement of [the Code of Judicial Conduct] rests more upon the shoulders of the *judges of the courts* than on the attorneys, although all have a responsibility thereunder.

*Grizzard v. Davis*, 131 Ga. App. 577, 579 (206 SE2d 853) (1974). Accordingly, I cannot agree with the majority that the trial judge's alleged lack of consideration of the information conveyed in the ex parte communications or the absence of objection by counsel renders the error harmless.

However, I can concur with the majority's holding in Division 3 inasmuch as a careful scrutiny of the record reveals that the improper communications were engaged in by all parties equally. Under these facts, I conclude that the violation of the rule against ex parte communications was harmless error.

DECIDED JULY 11, 1994 —
RECONSIDERATION DENIED JULY 27, 1994.

*Gary P. Bunch, Mona M. Keith,* for appellant.

*Richard G. Smith*, for appellee.