A02A1891. YATES et al. v. DUBLIN SIR SHOP, INC. et al.
(579 SE2d 796)

SMITH, Chief Judge.

Dublin Sir Shop, Inc. and William and Jewel Flanders brought this action against N. L. Yates, Jr. and Dennis Todd Yates after a dispute arose concerning the interpretation of certain documents executed in connection with the development of a shopping center in which all the parties have an interest. After a bench trial, the trial court entered judgment in favor of Dublin Sir Shop and the Flanderses. The Yateses appeal following the denial of their motion for new trial. They raise three issues, contending that the trial court improperly construed an unambiguous contract; erred in failing to grant their motion for new trial because of a conflict of interest on the part of the partner of appellees' counsel; and erred by engaging in ex parte communication with a witness after the close of evidence. We are not persuaded of the merit of any of these contentions, and we affirm the judgment.

The record shows that N. L. Yates, Jr. (Yates) and James Hilburn originally owned the property in issue. Intending to build a shopping center on the parcel, on April 18, 1996, they executed a document entitled, "Declaration of Cross-Easements and Covenants." The declaration, in relevant part, provides as follows:

> WHEREAS, the owners/developers intend to develop a retail shopping center on the property, containing approximately 22,000 square feet of retail space, and intend to sell Tract A to William Kenneth Flanders and Jewel T. Flanders and further intend to sell a portion of Tract B; and
>
> WHEREAS, owners/developers desire to impose upon the property mutual and beneficial covenants and easements benefitting owners/developers and their successors in title;
>
> NOW, THEREFORE, owners/developers hereby declare

the following cross-easements and covenants to run with the land:

## 1.

### Common Area

Common area shall mean the portion of the property outside the exterior walls of the shopping center buildings including walkways, driveways, parking areas and any other areas designated and intended for public use.

Each owner of the property shall have access to, and the right to use in common with other owners and occupants of the property and their customers, agents and employees the "common area."

. . .

## 3.

### Common Area Maintenance

Each owner of the property shall pay a proportional part of the costs of maintenance, use, and operation of the common area as the square footage of the building of such owner on the property bears to the total square footage of the retail buildings on the property.

After recording the declaration, Yates and Hilburn conveyed portions of the shopping center property to appellees. The parties then constructed the shopping center together. The Flanderses opened a Christian book store, the Dublin Sir Shop opened a men's clothing shop, and Yates and Hilburn leased a portion of their building to a women's clothing store. Hilburn later sold his interest in the center to Yates's son, Dennis Todd Yates. Part of the Yateses' building remained vacant for a number of months, and in December 1997, the Yateses leased that space to the Department of Human Resources — Rehabilitation Services Division for office space. Appellees objected, maintaining that the declaration restricted the property to retail use and asserting other objections as well.[1] When this dispute could not be resolved, they filed this action.

---

[1] They asserted that the Yateses violated that portion of the declaration providing that all common areas be available for use by all owners and customers when they demanded that employees and customers of appellees refrain from using the parking area in front of the buildings owned by the Yateses, and by refusing to pay their pro rata share of the costs of maintaining the common areas. The latter dispute was settled, and the former dispute was decided by the trial court in favor of appellees, but was not appealed.

1. In support of their suit, appellees argued that the use of the word "retail" in the declaration's preamble, as well as the use of the word "retail" twice in paragraph 3, clearly shows the owners/developers' intention to restrict the use of the property to retail space and prohibits leasing any space for office purposes. The trial court agreed with appellees, finding that the declaration clearly shows that the intent of the parties was to restrict the use of the property to retail space and that finding the intent of the parties and enforcing it is the cardinal rule of contract construction.

The Yateses contend that no construction was necessary because the contract is clear and unambiguous and does not include a fifth covenant restricting use of the property to retail establishments.

We do not agree with appellants that the declaration is perfectly clear. Because the document was written in contemplation of developing a retail shopping center, it includes language referring to that intent. But the document is silent as to whether that is the only permissible use of the property. It is therefore ambiguous on this point. The trial court correctly resorted to the principles and rules of contract construction to resolve this ambiguity.

It is true that the declaration is silent as to any restrictions upon use; if a restriction exists, it would have to be found by implication, which is not favored. *Sissel v. Smith*, 242 Ga. 595, 596 (2) (250 SE2d 463) (1978). Accord *Holbrook v. Davison*, 258 Ga. 844, 845 (1) (375 SE2d 840) (1989). But if the intent of the parties "is clear and it contravenes no rule of law and sufficient words are used to arrive at the intention, it shall be enforced irrespective of all technical or arbitrary rules of construction." OCGA § 13-2-3. Balancing the bias against finding restrictions by implication against the "cardinal rule of contract construction" — ascertaining the intent of the parties, we find that the trial court correctly gave the cardinal rule paramount importance. The intent of the parties is clearly expressed. They intended for the shopping center to be used for retail sales, not offices. This intent is easily discernible in the first cross-easement and is explicit in the preamble. The trial court did not err in so construing the declaration.

2. The Yateses next argue that the trial court should have granted them a new trial because King, an attorney who had represented them on various other matters, formed a partnership with appellees' attorney during the pendency of this action. It is undisputed, however, that King informed the Yateses that he was forming a partnership with appellees' counsel approximately two years before this case went to trial and that King represented the Yateses only on other matters, on a "case by case basis." He testified that he never had substantive discussions regarding this case with the Yateses. Anytime the subject arose, King told the Yateses that he "didn't want

to be involved with the case." The Yateses maintain that they were therefore "shocked" when the case came on for trial and King came into the courtroom and seated himself next to his partner at appellees' counsel table. The Yateses maintain that King actively participated in the trial by "passing notes and whispering in [appellees' counsel's] ear."

It is undisputed that the Yateses had no means of knowing what the notes referred to or what was said in the whispered conversations. But even if their allegation were true, and even assuming, without deciding, that it created a conflict of interest, the Yateses sat through the entire trial without raising this purported conflict. "[A] motion to disqualify should be made with reasonable promptness after a party discovers the facts which lead to the motion. A failure to make a reasonably prompt motion to disqualify may result in the conflict being waived." (Citations and punctuation omitted.) *Ga. Baptist Health Care System v. Hanafi*, 253 Ga. App. 540, 541 (559 SE2d 746) (2002). But length of delay in bringing the conflict to the court's attention alone is not dispositive of the issue. In determining whether to disqualify, the court must consider the length of the delay in light of the circumstances of the particular case, weighing these factors against the seriousness of the conflict alleged and the extent to which public confidence in the administration of justice might be affected were the motion denied. Id. at 542. Here, the Yateses waited approximately two years and actually sat through the trial at which the attorney they sought to disqualify sat at the opposing counsel table without raising the allegation of conflict, raising it only after an adverse judgment had been entered. Given this, the fact that the attorney testified he never discussed matters of substance pertaining to this particular case with the Yateses, and our conclusion that public confidence in the administration of justice would not be greatly affected by the presence of the attorney at issue at opposing counsel's table, we find that the trial court did not abuse its discretion in failing to grant a new trial on this ground.

3. Hilburn was a witness at trial. After the close of evidence but before judgment was entered, he was approached by Yates, who was concerned that Hilburn in his trial testimony had not disclosed that he owned an interest in a shopping center that included nonretail businesses. To be fair to Yates and to correct what Yates saw as an oversight, Hilburn received permission from all parties' counsel to place a supplement in the record in the form of a letter or affidavit.[2]

---

[2] The parties disagree regarding whether permission was given for a letter only or also for an affidavit. Counsel for the Yateses recalled giving Hilburn permission to write a letter. He did not recall whether an affidavit was mentioned, and although he did not recall whether Hilburn asked permission to have a conversation with the judge, he testified that "if he had asked to go meet with [the trial court], I would . . . not want him to do that."

Hilburn, an attorney, then prepared an affidavit and letter and personally carried them to the trial judge's office. He told the judge he would like to be able to file them to eliminate any question of the completeness and accuracy of his trial testimony. According to Hilburn, the judge simply told him to "go ahead and file it." No other person was within hearing of their conversation.

"Except as authorized by law or by rule, judges shall neither initiate nor consider ex parte communications by interested parties or their attorneys concerning a pending or impending proceeding." Uniform Superior Court Rule 4.1. Our Supreme Court has held, however, that when the court does not consider the ex parte communication, and both sides are equally responsible for it, any error is harmless. *Ivey v. Ivey*, 264 Ga. 435, 438 (445 SE2d 258) (1994). In its order, the trial court stated explicitly that "the court did not initiate the communication, the parties are equally responsible for the communication, and the information was not relied upon or considered by the court in making the final order." We note, as did the Supreme Court in *Ivey*, that "judges must scrupulously avoid ex parte communications whether or not they consider them" and "should avoid the appearance of impropriety when they carry out their duties. [Cit.]" Id. But even if the communication had been material to an issue in the case, we would be constrained to hold that any error was harmless. Given the circumstances presented here, when the communication involved was actually irrelevant to the issues in the case and the trial court stated on the record that he had not considered it, we find that the trial court did not err in holding that no reversible error exists.

*Judgment affirmed. Eldridge and Barnes, JJ., concur. Ellington, J., disqualified.*

DECIDED MARCH 19, 2003 —

*Ford & Barnhart, James L. Ford*, for appellants.
*Lewis & King, Francis M. Lewis, Hilbun & Helton, Jon F. Helton*, for appellees.