297 Ga. 451
FINAL COPY

S15F0064. STONE v. STONE et al.

MELTON, Justice.

Pursuant to Supreme Court Rule 34, we granted David E. Stone's (Husband) application to appeal the final decree entered in his divorce from Anna Stone (Wife). In doing so, we stated our specific interest in determining whether the trial court erred by awarding joint legal custody of the parties' minor son to Husband and Sandra Webb, the maternal grandmother (Grandmother).[1] Because Georgia statutory law supports joint custody arrangements only between parents, we must reverse the award of joint legal custody in this case.[2]

As is pertinent here, the record shows that Husband and Wife have been married to each other twice, and they have one minor son. Husband and Wife were divorced the second time by a decree dated January 13, 2014, and this

_____

[1] Grandmother was allowed to intervene in the divorce proceedings.

[2] We note that there are two additional related cases now pending in this Court – Case No. S15A0266 and Case No. S15A0267. We do not address those cases in this opinion.

decree incorporated a parenting plan. Among other things, the parenting plan awarded joint legal custody of the minor child to Husband, who the court specifically found was a fit parental custodian, and Grandmother. Husband was given primary physical custody, Grandmother was given visitation rights, and Wife, who the court found was unfit to have custody, was given only a potential for future visitation.

In the Georgia Code, our legislature has clearly indicated that joint custody arrangements do not include third parties when one or both parents are suitable custodians.[3] OCGA § 19-9-3, which lays out the general guidelines for custody considerations, shows a recognition that joint custody considerations remain with the parents of the child. OCGA § 19-9-3 (a) (1) provides:

> In all cases in which the custody of any child is at issue *between the parents*, there shall be no prima-facie right to the custody of the child in the father or mother. There shall be no presumption in favor

---

[3] In making this determination,
we apply the fundamental rules of statutory construction that require us to construe [the] statute according to its terms, to give words their plain and ordinary meaning, and to avoid a construction that makes some language mere surplusage. At the same time, we must seek to effectuate the intent of the legislature.
(Citations omitted.) Slakman v. Continental Cas. Co., 277 Ga. 189, 191 (587 SE2d 24) (2003).

of any particular form of custody, legal or physical, nor in favor of *either parent*. Joint custody may be considered as an alternative form of custody by the judge and the judge at any temporary or permanent hearing may grant sole custody, joint custody, joint legal custody, or joint physical custody as appropriate.

(Emphasis supplied.) The statute goes on to state an express desire to preserve sharing of *rights* between parents and *visitation* with parents and grandparents.

OCGA § 19-9-3 (d) states:

It is the express policy of this state to encourage that a child has *continuing contact with parents and grandparents* who have shown the ability to act in the best interest of the child and to *encourage parents to share in the rights and responsibilities* of raising their child after such parents have separated or dissolved their marriage or relationship.

(Emphasis supplied.) Quite explicitly, the statute includes grandparents with parents for purposes of contact (visitation) with the minor child, but, when rights and responsibilities (custody) are in consideration, the statute excludes grandparents and encourages sharing between the parents only.

This express policy is then employed in the definitions of key terms in the statute. OCGA § 19-9-6 (5) explains:

"Joint legal custody" means both *parents* have equal *rights and responsibilities* for major decisions concerning the child, including the child's education, health care, extracurricular activities, and religious training; provided, however, that the judge may designate

3

one *parent* to have sole power to make certain decisions while both *parents* retain equal *rights and responsibilities* for other decisions.

(Emphasis supplied.) Once more, the statute pairs "rights and responsibilities" solely with the parents, and grandparents are excluded. This is to be expected, as the stated definition of "joint legal custody" furthers the express policy of encouraging shared rights and responsibilities between parents. To a similar end, the statute states that "'[j]oint physical custody' means that physical custody is shared by the *parents* in such a way as to assure the child of substantially equal time and contact with *both parents*." (Emphasis supplied.) OCGA § 19-9-6 (6). Grandparents are again excluded from an arrangement for joint custody.

The purposeful nature of the Legislature's decision to exclude grandparents from sharing joint custody with a parent is also evident from the statutory definition of "sole custody."

> "Sole custody" means a *person*, including, but *not limited to, a parent*, has been awarded permanent custody of a child by a court order. Unless otherwise provided by court order, the *person* awarded *sole custody* of a child shall have the *rights and responsibilities* for major decisions concerning the child, including the child's education, health care, extracurricular activities, and religious training, and the noncustodial parent shall have the right to visitation or parenting time. . . .

(Emphasis supplied.) OCGA § 19-9-6 (11). Here, the entity paired with "rights

4

and responsibilities" is a "person," which may be someone other than a parent. This shows, on the face of the statute, that the Legislature intended that persons may have sole legal custody of a child when no parent is suitable for custody, but only parents may have joint legal custody. If the Legislature had intended otherwise, it would have included "a person" in the category of those who could have joint custody of a child with a parent. It did not.

This statutory construction dovetails perfectly with the Legislature's presumptions regarding the exercise and removal of parental power. OCGA § 19-7-1 (b.1) states:

> [I]n any action involving the custody of a child between the parents or either parent and a third party limited to grandparent, great-grandparent, aunt, uncle, great aunt, great uncle, sibling, or adoptive parent, parental power may be lost by the parent, parents, or any other person if the court hearing the issue of custody, in the exercise of its sound discretion and taking into consideration all the circumstances of the case, determines that an award of custody to such third party is for the best interest of the child or children and will best promote their welfare and happiness. There shall be a rebuttable presumption that it is in the best interest of the child or children for custody to be awarded to the parent or parents of such child or children, but this presumption may be overcome by a showing that an award of custody to such third party is in the best interest of the child or children. The sole issue for determination in any such case shall be what is in the best interest of the child or children.

5

This statute indicates that there are only three groups capable of exercising parental control: a parent, parents, or a third parties of a limited class. A group comprised of a parent and a third party is not mentioned because it is *not* a combination who may be empowered with joint control over a child. This becomes even more evident since there is a rebuttable presumption that it is in the best interests of a child to give custody to a *parent or parents*, and a third party may gain custody only after showing "by clear and convincing evidence that parental custody would harm the child." Clark v. Wade, 273 Ga. 587, 587-588 (544 SE2d 99) (2001) (construing OCGA § 19-7-1 (b.1)). Moreover, construing the Code as authorizing the State to require a fit and capable parent to share custody of his child with anyone except the child's other parent would raise significant constitutional concerns. See Brooks v. Parkerson, 265 Ga. 189 (454 SE2d 769) (1995). Statutes should be interpreted to avoid serious constitutional concerns where such an interpretation is reasonable. See Haley v. State, 289 Ga. 515, 522 (712 SE2d 838) (2011).

In light of the foregoing, the trial court in this case had no power to grant joint custody to Husband and Grandmother, and that award must be vacated. This result does not mean, however, that the statute does not respect and

6

promote the interaction of loving grandparents with a minor child. To the contrary, the statute encourages contact with grandparents in OCGA § 19-9-3 (d), and OCGA § 19-7-3 provides a mechanism for a grant of visitation rights to grandparents when necessary to ensure and preserve this contact. Also, in situations where neither parent is suitable to have custody, a grandparent might certainly be "a person" qualified to have sole custody of a minor child. However, in situations where a parent is suitable to exercise custody over a child, the statute does not allow that parental custody to be limited by a joint custody arrangement with a grandparent or, for that matter, any other person.

Judgment reversed in part. All the Justices concur, except Benham and Hunstein, JJ., who dissent.

HUNSTEIN, Justice, dissenting.

The result of the majority's opinion is that a grandmother, who has been the primary caretaker and the sole source of stability and security for almost the entire life of her grandson, will no longer have any legal right to participate in his care. Because I disagree with the holding of the majority and do not believe

7

that sole legal custody to David E. Stone (Husband) is in the best interest of the child, I must dissent.

In order to understand the repercussions of the majority's decision, it is important to recite here the particular circumstances of this case. In 2005, a child was born to Husband and Anna Stone (Wife); the parents were not married. Husband, Wife, and child moved into the home of child's maternal grandmother, Sandra Webb (Grandmother). Wife had a history of drug abuse, and therefore, the Department of Family and Children Services would visit Grandmother's home to drug test Wife. Six months later, Wife and Husband were married and moved into their own home, and the child resided with them. Over the next few years, Husband and Wife continued to struggle with difficulties, including Wife's arrest and continued drug abuse and Husband's work out of state. Although there were times that the child resided with Wife or Husband, Grandmother was the primary caretaker of the child.

Husband and Wife were divorced for the first time in March 2011. At that time, Wife was awarded primary physical custody of the child; Wife and child lived with Grandmother. In October 2011, Grandmother was granted temporary guardianship of the child with the consent of both Husband, because he worked

out of state, and Wife, because she needed to attend inpatient drug treatment. Before this guardianship case was completed, Grandmother petitioned for custody in Gwinnett Superior Court on March 26, 2013.

In the meantime, after inpatient drug treatment, Wife left Georgia to live with Husband, rather than complete her outpatient drug treatment. Wife and Husband remarried in April 2013. Husband then filed for divorce in Gwinnett Superior Court on July 16, 2013. The court granted Grandmother's motion to intervene in the divorce action. At all times, the child remained with Grandmother and attended school in her district.

With Grandmother having been granted leave to intervene in the divorce action, the three parties were concurrently litigating the divorce and custody proceedings.[4] Because this is a custody dispute between parents and a

---

[4] The trial court consolidated the pending actions and held hearings in the consolidated cases. The court issued orders simultaneously regarding custody and visitation in the pending cases, with some orders filed in more than one case. In the divorce action, of which this Court has jurisdiction, the court entered a divorce decree incorporating a permanent parenting plan. Although the permanent parenting plan awards joint legal custody to Husband and Grandmother, the court did not provide any rationale for this decision in the permanent parenting plan. Instead, the court explained its decision to award joint legal custody during one of the consolidated hearings and later set forth this explanation in the order the court entered in the custody case. To be clear, I do not purport to render an opinion with regard to the written custody order entered by the court. However, I have reviewed the record in

2

grandparent, it is governed by OCGA § 19-7-1 (b.1).[5] See Clark v. Wade, 273

Ga. 587 (II) (544 SE2d 99) (2001) (plurality opinion).

Pursuant to OCGA § 19-7-1 (b.1), in awarding custody, the court is to

determine what is in the best interest of the child and to consider the child's

interest in a safe, secure environment that promotes his physical, mental, and

emotional health and development. Clark, 273 Ga. at 593. "In considering what

is in the best interest of the child, the trial court may consider the child's

---

the divorce proceedings and rely on the explanation the court provided therein for its award of joint legal custody.

[5] OCGA § 19-7-1 (b.1) provides as follows:

Notwithstanding subsections (a) and (b) of this Code section or any other law to the contrary, in any action involving the custody of a child between the parents or either parent and a third party limited to grandparent, great-grandparent, aunt, uncle, great aunt, great uncle, sibling, or adoptive parent, parental power may be lost by the parent, parents, or any other person if the court hearing the issue of custody, in the exercise of its sound discretion and taking into consideration all the circumstances of the case, determines that an award of custody to such third party is for the best interest of the child or children and will best promote their welfare and happiness. There shall be a rebuttable presumption that it is in the best interest of the child or children for custody to be awarded to the parent or parents of such child or children, but this presumption may be overcome by a showing that an award of custody to such third party is in the best interest of the child or children. The sole issue for determination in any such case shall be what is in the best interest of the child or children.

3

historical relationship with the parent, the child's relationship with the third-party custodian, and the child's special medical, emotional, or educational needs."  Id.

> [OCGA § 19-7-1(b.1) ] establishes a rebuttable presumption that it is in the best interest of the child to award custody to the parent of the child. The following three presumptions are implicit in the statute: (1) the parent is a fit person entitled to custody, (2) a fit parent acts in the best interest of his or her child, and (3) the child's best interest is to be in the custody of a parent. The presumption can nonetheless be overcome by the third-party relative showing, by clear and convincing evidence, that parental custody would harm the child. Harm in this context has been defined . . . as either physical harm or significant, long-term emotional harm[, not] merely social or economic disadvantages. Once the presumption has been overcome, the third-party relative must prove that an award of custody to him or her will best promote the child's health, welfare, and happiness.

Galtieri v. O'Dell, 295 Ga. App. 797, 798 (673 SE2d 300) (2009) (citations and punctuation omitted); see Clark, 273 Ga. at 593, 598-599.  Additionally, in evaluating the issues of harm and custody, the trial court should consider a variety of factors to encompass the child's needs:

> (1) who are the past and present caretakers of the child; (2) with
>
> whom has the child formed psychological bonds and how strong are

4

those bonds; (3) have the competing parties evidenced interest in, and contact with, the child over time; and (4) does the child have unique medical or psychological needs that one party is better able to meet.

Clark, 273 Ga. at 598-599 (footnotes omitted).

With regard to Wife, the court found by clear and convincing evidence that Wife was currently unfit to have custody of the child and an award of custody to her would result in physical and significant, long-term emotional harm to the child. This finding was based on Wife's continued struggles with chronic, unrehabilitated substance abuse, and the fact that, at the time of the trial, she was incarcerated and had no means of support or home to provide for the child.

With Grandmother having overcome the presumption as to Wife, see Clark, 273 Ga. at 598, the court concluded that Grandmother had shown by clear and convincing evidence that the child would suffer significant, long-term emotional harm if Grandmother was not allowed to continue to be "a legal and

physical presence in the child's life" and also that it was in the best interest of the child that Grandmother maintain a presence in the child's life. The court also noted that Grandmother had done an exemplary job of providing a caring and nurturing home for the child.

With regard to Husband, the court found that he was not an unfit parent. Admittedly, he had ceded his parental prerogative to Grandmother oftentimes throughout the child's life, and he had continued to be enmeshed with Wife's struggles and addictions and used poor judgment as a result. However, he also had established a stable business in South Carolina and maintained a very strong bonded relationship with the child. Accordingly, the court found that Grandmother had not shown by clear and convincing evidence that an award of primary physical custody to Husband would cause the child to suffer physical or significant, long-term emotional harm.

Because the best interests of the child resulted in a determination that custody should be to both Husband and Grandmother, the court correctly awarded them joint legal custody in the permanent parenting plan.

As the majority points out, "joint legal custody" is defined as "both parents" having equal rights; the definition does not include a third-party

6

relative, such as a grandparent. OCGA § 19-9-6 (5). However, such a strict reading of the statue ignores OCGA § 19-7-1 (b.1)'s requirement that "[n]otwithstanding . . . any other law to the contrary," the "sole issue for determination" "in any action involving the custody of a child between the parents or either parent and a . . . grandparent," is "what is in the best interest of the child." Here, "in determining the best interests of the child, the superior court had to consider who among the parties would be more likely to provide [the child] with the environment and consistent treatment [ ]he needed." Mauldin v. Mauldin, 322 Ga. App. 507, 518 (4) (745 SE2d 754) (2013). According to the evidence presented to the trial court, the best interests of the child mandated joint legal custody to Husband and Grandmother.

In our society, there has been a steady increase in the number of grandparents raising their grandchildren. See Mary F. Radford, Ga. Guardianship and Conservatorship § 2:5, n. 1 (2014) (citing a 2013 Pew Research Center analysis of U. S. Census Bureau data, which revealed that about 7 million grandparents were living with grandchildren in 2011, a 22% increase since 2000, and that the grandparent was the primary caregiver for about 3 million of these children); Kathleen Meara, What's in a Name? Defining and

7

Granting a Legal Status to Grandparents Who Are Informal Primary Caregivers of Their Grandchildren, 52 Fam. Ct. Rev. 128, 129 (2014) (citing a 2010 U. S. Census Report, which found that more than 2.5 million grandparents are responsible for their grandchildren). As I have previously recognized, "[i]n reality, many children today are being raised not by their parents but by other family members with a strong attachment to the child and who have lovingly and responsibly acted in the role of the child's parent." Clark, 273 Ga. at 602 (Hunstein, J., concurring). In light of this trend, it is impractical and shortsighted to conclude that joint legal custody must be limited to parents. "In order to balance and protect the rights of all parties, a trial court must be authorized to consider the entirety of the circumstances and to assess the importance of the conflicting interests present in every custody dispute." Clark, 273 Ga. at 605 (Hunstein, J., concurring). And if those circumstances dictate that joint legal custody between a parent and a grandparent is in the best interest of the child, then awarding such custody should be an option. See Mauldin, 322 Ga. App. at 518 (affirming award of joint legal custody to the grandparents and the father, primary physical custody to the grandparents, and visitation by the

8

mother).[6]

I am particularly troubled by the practical outcome that results from the majority's opinion. As argued by the child's guardian ad litem in this case, it is in the best interest of the child that Grandmother be awarded custodial rights because she has provided the only stable and secure home that the child has ever known. Since the child's birth, Wife has struggled with chronic, unrehabilitated drug abuse and resulting legal problems; Husband has continued to be enmeshed with Wife's addiction struggles. For nearly the child's entire life, both Husband and Wife willingly, continually ceded parental responsibility to Grandmother. From birth until he was eight, the Grandmother made all of the major decisions for the child, including medical and religious decisions, enrolling him in her school district, and ensuring his participation in extracurricular activities.

The trial court was correct in its finding that the absence of Grandmother's "legal and physical presence" would cause harm to the child. In so holding, the trial court was logically precluded from any award of custody to Husband which would simultaneously terminate Grandmother's legal custodial rights as to the

---

[6] As Mauldin evidences, I sincerely doubt that awarding joint legal custody to a parent and grandparent is a unique occurrence for judges facing contentious custody disputes.

child. It is apparent from the trial court's order that custody in Husband would only be in the child's best interest, and not cause long-term harm, if it were predicated on the concurrent exercise of legal custody by Grandmother.

For all of these reasons, I must dissent. I urge the Legislature to reconsider its limited definition of "joint legal custody" as stated in OCGA § 19-9-6 (5). I would affirm the trial court's award of joint legal custody to Husband and Grandmother.

I am authorized to state that Justice Benham joins in this dissent.

Decided June 29, 2015.

Domestic relations. Gwinnett Superior Court. Before Judge Franzen, pro hac vice.

Alan Mullinax & Associates, Alan Mullinax, Zachary R. Stepp, for David E. Stone.

Anna Stone, pro se.

Lawrence L. Washburn III, for Webb.