■ In the Matter of OTIS P. JENKINS, Respondent-Appellant, v JUDY A. JENKINS, Appellant-Respondent, and PAMELA WALTON, Respondent. (And Three Other Related Proceedings.) [780 NYS2d 211]—

Carpinello, J. Cross appeals from an order of the Family Court of Albany County (Tobin, J.), entered October 20, 2003, which dismissed the parties' applications, in four proceedings pursuant to Family Ct Act article 6, to, inter alia, modify a prior order of custody.

The child who is the subject of these proceedings is now six years old. In 1999, a stipulated order was entered in Family Court granting the child's parents joint custody with primary physical custody to the mother and liberal visitation to the father and paternal grandparents. At present, and since the fall of 2000, the mother has resided in Georgia, the father has resided in New York, albeit in state prison for some of this time, and the grandparents have resided in New York. As for the child, he originally lived in Georgia with his mother and two half siblings. In June 2002, however, he came to New York for a "visit" with his grandparents and has essentially remained here ever since, initially upon consent of the mother and thereafter pursuant to a court order.[1]

Suffice it so say, since the mother's move to Georgia and for 2½ years thereafter, numerous modification and/or violation petitions have been filed by and against the parties all centering around custody and visitation. During this time period, numerous orders were entered by Family Court, the most notable being an October 29, 2002 order awarding the mother and paternal grandmother joint custody with primary physical custody to the grandmother in Albany County (see n 1, supra). In addition to the proceedings commenced in this state, in May 2003 the mother also petitioned the Superior Court of Chatham County, Georgia, for custody of the child. This prompted Family Court and the Georgia Superior Court to confer on the issue of which court should hear the matter. It was ultimately agreed that Georgia Superior Court would assume jurisdiction. Thus, Family Court issued an order dismissing all extant petitions and vacating all its prior orders with the exception of the 1999 stipulated order. The father and grandmother appeal.[2]

Upon our review of the record as a whole, we conclude that the matter was properly transferred to Georgia. As a starting point, the father and grandmother correctly assert that Domestic Relations Law § 76-a governs since each of these parties

1. Specifically, during the child's consensual visit to New York, the grandmother filed a "petition for custody" wherein she sought "guardianship for emergency reason[s and] for medical insurance." The petition was granted resulting in an October 29, 2002 order transferring legal custody to the mother and grandmother with physical custody to the grandmother. The mother claims that she did not receive notice of the petition itself or the resulting order; indeed, the mother claims that she did not know of its existence until late December 2002 or early January 2003 when she was finally able to obtain counsel in New York. Notably, two days after the October 2002 order was entered, the father sought to modify it because it completely eliminated his rights to joint custody.

2. This Court granted a stay of Family Court's order and thus the child continues to reside with his grandparents in Albany County.

continued to reside in New York at all times subsequent to the initial custody order in 1999. Pursuant to this provision, New York maintained exclusive, continuing jurisdiction to modify that order and, therefore, Family Court erred in dismissing the petition on the ground of subject matter jurisdiction (*see* Sobie, 2004 Supp Practice Commentaries, McKinney's Cons Laws of NY, Book 14, Domestic Relations Law § 76-b, 2004 Pocket Part, at 113-114; *compare* Domestic Relations Law § 76 [pertaining to *initial* child custody determinations]). This is not to say, however, that Family Court could not have surrendered its jurisdiction on the ground that New York was an inconvenient forum under the circumstances (*see* Domestic Relations Law § 76-f [1]).

Here, although Family Court did not discuss whether New York was an inconvenient forum, having erroneously dismissed the proceedings for lack of subject matter jurisdiction, implicit in the transcripts on the issue of jurisdiction was the related issue of which forum was the more appropriate forum to resolve the custody dispute (*see* Domestic Relations Law § 76-f [1]).[3] Thus, although Family Court erred in its stated reason and, therefore, never specifically reached the issue of inconvenient forum, the record nevertheless contains sufficient evidence to provide a sound basis supporting a determination that Georgia is indeed the more appropriate forum (*see Matter of Jun Cao v Ping Zhao*, 2 AD3d 1203, 1204 [2003], *lv denied* 1 NY3d 509 [2004]; *cf. Matter of Dawber v Kelly*, 287 AD2d 625, 626 [2001] [applying predecessor statutory provision]; *Matter of Uhl v Uhl*, 244 AD2d 935 [1997] [same]; *Matter of Smith v Smith*, 226 AD2d 1095, 1096 [1996] [same]). Critical to our conclusion is the fact that the attorneys for all parties were given a full opportunity to submit any written evidence or material pertaining to the issue of jurisdiction (*see Matter of Jun Cao v Ping Zhao, supra* at 1204; *cf. Matter of Dawber v Kelly, supra* at 626; *Matter of Uhl v Uhl, supra* at 936; *Matter of Smith v Smith, supra* at 1096). Thus, the father and grandmother had ample opportunity to stress Family Court's exclusive, continuous jurisdiction under Domestic Relations Law § 76-a and to submit evidence on whether the statutory factors under Domestic Relations Law § 76-f (2) inured to their benefit and justified retention of jurisdiction in New York.

Upon consideration of the evidence in the record, we find that

---

3. During the second of two transcribed conferences on the matter, the Georgia Superior Court stated that, based upon its review of certain documents, as well as discussions of the matter, Georgia "is in the best position to have jurisdiction." Family Court specifically did not "oppose this position."

the statutory factors outlined under Domestic Relations Law § 76-f (2) justified declination of jurisdiction in favor of Georgia. Stripped to its essentials, the instant proceedings center around who, as between the mother and grandmother, should have legal and physical custody of the child in light of allegations that the mother is unfit and that the child's best interests will be promoted by granting custody to the grandmother.[4] Whether litigated in New York or Georgia, the burden on the grandmother to overcome the mother's fundamental right to raise her child is stringent (*compare Matter of Bennett v Jeffreys*, 40 NY2d 543, 549 [1976], *with Clark v Wade*, 273 Ga 587, 544 SE2d 99 [2001]).[5]

Evidence pertaining to the critical issue of the *mother's* alleged unfitness is primarily in Georgia, where the mother has now resided for over 3½ years and where the child resided for the two-year period preceding the grandmother's initial custody petition (*see* Domestic Relations Law § 76-f [2] [b], [f]). Said differently, although a fair argument can be made that evidence of the *child's* development and emotional well-being is in New York since he has now resided here since June 2002, a dispute between a parent and nonparent over custody warrants a threshold showing of acts or omissions on the *parent's* part sufficient to justify interference with parental custody (*compare Matter of Bennett v Jeffreys, supra, with Clark v Wade, supra*). Evidence relating to this threshold issue lies primarily in Georgia. Finally, we are also compelled to point out that proceedings are already underway in Georgia to resolve the custody dispute, all parties having participated in a hearing in that state several months ago (*see* Domestic Relations Law § 76-f [2] [g], [h]).

The parties' remaining contentions have been reviewed and found to be unpersuasive.

Mercure, J.P., and Spain, J., concur.

Peters, J. (concurring in part and dissenting in part). We agree with the majority's determination that because New York maintained exclusive, continuing jurisdiction to modify the 1999 custody order, Family Court erred in dismissing the proceedings for lack of subject matter jurisdiction. However, we do not agree that we should decide the question of inconvenient forum and hold that the matter was properly transferred to Georgia.

---

**4.** The father appears to seek only joint legal custody of the child with his parents and does not contend that the child should reside with him. The father does contend, however, that his parents should have primary physical custody of the child.

**5.** In so noting, we express no opinion on the matter. Indeed, the record raises some serious concerns about the mother's fitness to parent.

Pursuant to Domestic Relations Law § 76-a, Family Court's jurisdiction continues until "neither the child, the child and one parent, nor the child and a person acting as a parent have a significant connection with this state and that substantial evidence is no longer available . . . concerning the child's care, protection, training, and personal relationships" (Domestic Relations Law § 76-a [1] [a]). Indeed, when the mother sought to vacate the October 2002 order, Family Court determined that it had continuing exclusive jurisdiction due to its January 1999 order of custody and described the significant connections that still exist with the child and parents in this state.* Moreover, the record reflects that *all parties*, including the grandparents, lived in New York until the end of October 2000 when the mother relocated with this child without the permission of either the court or the father and that the parties engaged in extensive litigation in New York. For these reasons, we agree with the majority that Family Court erred in concluding that it no longer had continuing exclusive jurisdiction pursuant to Domestic Relations Law § 76-a (1) (a).

However, we do not agree with the majority that, based upon this record, we should address and resolve this case by finding that New York was an inconvenient forum. Domestic Relations Law § 76-f specifically requires that before such a determination is made, Family Court "shall" allow the parties to make a submission on this issue and then "shall" consider all relevant factors including those listed in Domestic Relations Law § 76-f (2) (a)-(h). We are not persuaded that the offer made to the parties to make a submission when the only issue was the child's "home state" jurisdiction suffices (*see Matter of Rey v Spinetta*, 8 AD3d 393, 394 [2004]; *compare Matter of DeGrizje v Delviccario*, 279 AD2d 574, 575 [2001], *lv denied* 96 NY2d 716 [2001]).

In light of Family Court's limitation of the submission by the parties to the issue of "home state" jurisdiction and in the absence of sufficient evidence in the record addressing the relevant factors (*compare Matter of Jun Cao v Ping Zhao*, 2 AD3d 1203, 1204 [2003], *lv denied* 1 NY3d 509 [2004]), we would reverse and remit the matter to Family Court for further proceedings (*see Matter of Dawber v Kelly*, 287 AD2d 625, 626 [2001];

---

* It detailed that both the grandparents and the father continue to reside in New York and that the child was sent to New York by the mother in 2002. Family Court also expressed a concern that the child might be in danger of neglect if he were returned to Georgia and that the mother might, once again, secrete the child in another jurisdiction if New York declined to exercise jurisdiction since she had twice removed the child in contravention of New York orders.

*Matter of Uhl v Uhl*, 244 AD2d 935, 936 [1997]; *Matter of Smith v Smith*, 226 AD2d 1095, 1096 [1996]).

Kane, J., concurs. Ordered that the order is affirmed, without costs.

