Matter of Diana XX v Nicole YY (2021 NY Slip Op 00352)





Matter of Diana XX v Nicole YY


2021 NY Slip Op 00352


Decided on January 21, 2021


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: January 21, 2021

531532

[*1]In the Matter of Diana XX., Appellant,
v
Nicole YY., Respondent, and Christopher ZZ., Appellant. (And Two Other Related Proceedings.)

Calendar Date: January 5, 2021

Before: Garry, P.J., Clark, Aarons, Pritzker and Colangelo, JJ.


Lisa K. Miller, McGraw, for Diana XX., appellant.
Clea Weiss, Ithaca, for Christopher ZZ., appellant.
Kathryn Friedman, Buffalo, for respondent.
Pamela Doyle Gee, Big Flats, attorney for the child.
Susan McNeil, Brooktondale, attorney for the child.



Clark, J.
Appeal from an order of the Family Court of Chemung County (Campanella, J.), entered May 13, 2020, which, among other things, in two proceedings pursuant to Family Ct Act article 6, dismissed the petitions.
Respondent Nicole YY. (hereinafter the mother) has two children (born in 2007 and 2013). Respondent Christopher ZZ. is the father of the older child [FN1] and respondent Jamie A. is the father of the younger child. On April 19, 2019, the mother and Jamie A. traveled to Tennessee with the children to visit the children's maternal grandmother. Within 24 hours of arriving in Tennessee, either the mother or Jamie A. called 911 to report that they were having adverse reactions to a substance that they had injected into their bodies and that they feared they were overdosing. Emergency responders were dispatched to the family's motel room, where they found the mother and Jamie A. experiencing medical emergencies while the younger child was asleep on a bed. As a result of this incident, the Tennessee Department of Children's Services commenced a neglect proceeding against the mother, Jamie A., Christopher ZZ. and petitioner in a juvenile court in Rutherford County, Tennessee (hereinafter referred to as the Tennessee court). The older child — who had been with the maternal grandmother at the time of the incident — and the younger child consequently came into the care and custody of the Tennessee Department of Children's Services and they have remained in foster care in Tennessee ever since.[FN2]
On May 2, 2019, petitioner — the paternal grandmother of the older child — commenced a Family Ct Act article 6 proceeding asserting that a 2016 custody order that had given her joint legal custody of the older child should be modified to grant her sole legal and physical custody of the older child. The parties first appeared on the petition on May 28, 2019, at which time the matter was adjourned for the assignment of a new judge due to both Chemung County Family Court judges having conflicts of interests that required recusal. The matter once again came before Family Court on June 27, 2019; at that point, an Elmira City Court Judge had been assigned to serve as an Acting Family Court Judge on the matter. During this appearance, a magistrate from the Tennessee court appeared by phone and it was agreed that the matter would be adjourned to August 2019 for a joint hearing on the issue of jurisdiction. However, as a result of apparent miscommunications and a lack of diligence, cooperation and urgency on the part of Family Court (see generally Domestic Relations Law § 75-f), the contemplated August 2019 joint hearing did not occur.
In August 2019, given the absence of cooperation from Family Court, the Tennessee court issued an order in which it determined that it continued to have temporary emergency jurisdiction over the neglect proceeding (see Domestic Relations Law § 76-c [1]) and that it would proceed with an adjudication of the neglect allegations, but [*2]bifurcate the dispositional phase of the proceeding to account for the possibility of transferring the matter to Family Court for disposition. The following month, in September 2019, Family Court issued an order on default granting sole legal custody of the older child to petitioner. Unable to secure assistance from her assigned counsel,[FN3] petitioner attempted to register and enforce the September 2019 custody order in the Tennessee court. However, the Tennessee court refused to honor the order, allegedly on the ground that doing so would result in the separation of the children. As a result, in November 2019, petitioner commenced a second Family Ct Act article 6 proceeding, seeking custody of the younger child.
Meanwhile, the Tennessee court conducted a fact-finding hearing on the neglect allegations and thereafter entered an adjudication order finding that each of the parents had neglected their respective children and that petitioner had neglected the older child. Thereafter, in December 2019, the Tennessee court entered a "temporary dispositional order" in which it directed that jurisdiction be transferred to Family Court for a dispositional hearing and that the children remain in the care and custody of the Tennessee Department of Children's Services pending Family Court's acceptance of jurisdiction and a "review [of] the sufficiency of any orders out of [Family Court] to determine if such would satisfy [the Tennessee court] to the degree that [it] would feel comfortable releasing all further jurisdiction and control of this matter" to Family Court.[FN4]
On December 17, 2019, Family Court issued an amended custody order on default, in which it declared its continuing jurisdiction over the older child (see Domestic Relations Law § 76-a [1]). Two days later, Family Court issued a "scheduling order" accepting jurisdiction from the Tennessee court regarding "final disposition" of the children and directing the Chemung County Department of Social Services (hereinafter DSS) to work with the Tennessee Department of Children's Services.[FN5] Roughly six weeks later, DSS submitted a letter to Family Court expressing its belated opposition to the court's acceptance of jurisdiction over the dispositional phase of the neglect proceeding. In that letter, DSS included hearsay statements regarding a review purportedly conducted pursuant to the Interstate Compact for Placement of Children (hereinafter ICPC). At a subsequent appearance in Family Court, DSS stated that it would not approve petitioner as a placement resource for the children. Family Court reversed course and, invoking the doctrine of forum non conveniens, stated that it was no longer inclined to accept jurisdiction from the Tennessee court and invited DSS to seek vacatur of its December 2019 order accepting jurisdiction. DSS subsequently filed the requested vacatur motion.[FN6] In May 2020, without hearing argument on the motion as it had indicated or conducting a hearing, Family Court issued [*3]an order declining the transfer of jurisdiction, returning the matter to the Tennessee court for disposition, dismissing petitioner's custody petitions and vacating the December 2019 amended order of custody. The grandmother and Christopher ZZ. appeal from Family Court's May 2020 order, which this Court has stayed pending our determination of the appeal.
As we rarely see in this Court, all parties who have submitted briefs on the appeal are in agreement that Family Court's handling of this case was rife with error, that its May 2020 order should be reversed and that the matter should be remitted to Family Court before a different judge for further proceedings, including the immediate reclaiming of jurisdiction from the Tennessee court.[FN7] We agree.
The circumstances of this case are heartbreaking and underscore the importance of Family Court learning and understanding the Uniform Child Custody Jurisdiction and Enforcement Act (see Domestic Relations Law art 5-A [hereinafter the UCCJEA]) and applying it with diligence and care. Jurisdiction over a neglect proceeding "does not depend upon the situs of the neglect" (Matter of Milani X. [Katie Y.], 149 AD3d 1225, 1225 [2017]; see Family Ct Act § 1013 [d]). Rather, in such cases, jurisdiction is governed by the UCCJEA (see Domestic Relations Law § 75-a [4]; Matter of Hadley C. [David C.], 137 AD3d 1524, 1524 [2016]). The UCCJEA vests Family Court with jurisdiction over neglect proceedings when, as relevant here, New York "is the home state of the child on the date of the commencement of the proceeding, or was the home state of the child within six months before the commencement of the proceeding and the child is absent from this state but a parent or person acting as a parent continues to live in this state" (Domestic Relations Law § 76 [1] [a]; see Matter of Milani X. [Katie Y.], 149 AD3d at 1226 & n). Under the UCCJEA, the "home state" is defined as "the state in which [the] child lived with a parent or a person acting as a parent for at least six consecutive months immediately before the commencement" of the proceeding (Domestic Relations Law § 75-a [7]).
Here, despite the absence of a hearing or evidence on the matter, there was no dispute that the children and their respective parents/custodian had lived in New York for at least six consecutive months prior to the April 2019 commencement of the neglect proceeding in Tennessee, thereby making New York the children's home state (see Domestic Relations Law §§ 75-a [7]; 76 [1] [a]).[FN8] Thus, pursuant to the UCCJEA, Family Court had jurisdiction over the neglect proceeding commenced in Tennessee (see Domestic Relations Law § 76 [1] [a]).
Family Court, however, had the discretion to decline jurisdiction if it determined — upon consideration of eight statutorily-enumerated factors — that it was "an inconvenient forum under the circumstances and that a court of another state [was] a more appropriate forum" (Domestic Relations Law § 76-f [1], [2[*4]]). Those statutory factors include (1) "whether domestic violence or mistreatment or abuse of a child or sibling has occurred and is likely to continue in the future and which state could best protect the parties and the child," (2) the length of time the children have resided in another state, (3) the distance between the two states in question, (4) the relative financial circumstances of the parties, (5) any agreement among the parties regarding jurisdiction, (6) the nature and location of relevant evidence, including testimony from the children, (7) the ability of each state to decide the issue expeditiously and the procedures necessary to present the relevant evidence, and (8) the familiarity of each court with the relevant facts and issues (Domestic Relations Law § 76-f [2] [a]-[h]).
Upon review of the record, it is apparent that Family Court did not engage in the requisite consideration of the statutory factors before declining to accept jurisdiction from the Tennessee court. Indeed, Family Court did not discuss the statutory factors or cite to the relevant UCCJEA provisions in its May 2020 order. Rather, in reaching its conclusion that New York was not a convenient forum for the dispositional determination, Family Court erroneously relied on CPLR 327 (a), which allows for the dismissal of a civil action "[w]hen the court finds that[,] in the interest of substantial justice[,] the action should be heard in another forum."[FN9] Moreover, in concluding — under CPLR 327 (a) — that New York was not a convenient forum, Family Court erroneously relied upon DSS's hearsay statements regarding the alleged findings of an ICPC review of petitioner. Notwithstanding Family Court's failure to conduct the requisite analysis and the absence of any testimony, we find that the record is sufficient to permit us to independently consider and weigh the relevant statutory factors to determine whether New York is an inconvenient forum for the dispositional phase and, if so, whether it is appropriate for Tennessee to exercise jurisdiction (see Domestic Relations Law § 76-f [1], [2]; Matter of Jenkins v Jenkins, 9 AD3d 633, 635 [2004], lvs dismissed 5 NY3d 881 [2005], 6 NY3d 751 [2005]; compare Matter of Cody RR. v Alana SS., 176 AD3d 1372, 1374 [2019]).
The record irrefutably reflects that the children came into emergency care in Tennessee during a brief visit to the state and that, prior to entering care, they had not resided in Tennessee. The children's respective parents/legal custodian reside in New York, as does a half sibling of one of the children. Roughly 850 miles separate the Tennessee court and Chemung County, and the parties have limited financial means to travel to Tennessee to participate in court proceedings or to visit with the children. Additionally, with the exception of DSS, which did not provide an appropriate basis in law for its objection, all parties and the Tennessee court agreed that Family Court should exercise jurisdiction over the [*5]dispositional phase of the neglect proceeding. Significantly, evidence regarding the children's best interests and the feasibility of reunifying them with their respective parents and/or petitioner is in New York, including proof relating to any remedial and rehabilitative services offered to and engaged in by the mother and Jamie A. Any testimony required from witnesses located in Tennessee can be taken by phone. In short, Family Court is in a better position than the Tennessee court to efficiently and expeditiously decide the matter of disposition, particularly given its prior entry of Family Ct Act article 6 orders pertaining to the older child. Accordingly, upon our consideration and weighing of all of the statutory factors, we do not find that New York is an inconvenient forum for the dispositional phase of the neglect proceeding (see Domestic Relations Law §§ 76 [1] [a]; 76-f [1], [2]). Thus, Family Court improperly declined to accept jurisdiction from Tennessee.
We further find that Family Court erred in vacating the December 2019 amended order of custody and dismissing both of petitioner's Family Ct Act article 6 petitions.[FN10] Family Court did so without conducting a hearing or taking evidence on the issues and erroneously relied upon hearsay statements made by DSS regarding the purported ICPC report. Inasmuch as Family Court did not afford petitioner adequate notice and opportunity to be heard on the matters, Family Court's vacatur of the December 2019 amended order and dismissal of the petitions raise serious due process concerns and, therefore, must be reversed (see generally Matter of Whiteford v Jones, 104 AD3d 995, 996 [2013], lv dismissed 21 NY3d 974 [2013]; Matter of Alexis AA. [Angela YY.—Bradley AA.], 93 AD3d 1090, 1092 [2012]).
In light of all of the foregoing, we reverse Family Court's May 2020 order and remit the matter to Family Court, before a different judge, so that jurisdiction over the dispositional phase can be reclaimed from Tennessee within 14 days of the date of this decision. To the extent that we have not addressed any arguments raised by petitioner or Christopher ZZ., they are either rendered academic by our determination or found to be without merit.
Garry, P.J., Aarons, Pritzker and Colangelo, JJ., concur.
ORDERED that the order is reversed, on the law, without costs, matter remitted to the Family Court of Chemung County for further proceedings not inconsistent with this Court's decision before a different judge, and, within 14 days of the date of this decision, that court is directed to issue an order accepting jurisdiction from Tennessee over the dispositional phase of the neglect proceeding.



Footnotes

Footnote 1: At all times relevant to this appeal, Christopher ZZ. has been in the care and custody of the Department of Corrections and Community Supervision.

Footnote 2: It was determined that the maternal grandmother was not a placement resource for the children.

Footnote 3: We agree with petitioner that her first assigned counsel was wholly ineffective. However, in or around January 2020, Family Court assigned her a new attorney, who provided petitioner with effective assistance of counsel.

Footnote 4: In this order, the Tennessee court repeatedly decried Family Court's "lack of cooperation" in addressing and resolving the jurisdictional issue raised by the neglect proceeding. The Tennessee court also explained its grounds for refusing to honor the September 2019 custody order, stating that, among other things, it was entered without a fact-finding hearing and failed to provide the older child's parents with due process.

Footnote 5: In response, the Tennessee court issued an order permitting the Tennessee Department of Children's Services to arrange for the transfer of the children to DSS and to prepare an order detailing such arrangements.

Footnote 6: Christopher ZZ. was the only party to file written opposition to the motion.

Footnote 7: By letter to this Court, DSS indicated that it was not filing a brief on appeal.

Footnote 8: In fact, the record suggests that New York had been the home state of the children for many years. Indeed, Family Court (Argetsinger, J.) issued an order relating to the older child in 2013 and Family Court (Hayden, J.) modified that order in 2016.

Footnote 9: Notably, in support of its motion to vacate Family Court's December 2019 order accepting jurisdiction, DSS submitted an affirmation that cited to CPLR 327 (a) as governing law.

Footnote 10: The record does not reflect that Family Court conducted a first appearance on the November 2019 petition or otherwise addressed the substance of that petition prior to dismissing it.